THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
ROBERT BARRY, Defendant-Appellee.

First District (3rd Division)   No. 1—87—3428

Opinion filed August 15, 1990.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Linda Wo-
loshin, and Nancy G. Kaplan, Assistant State's Attorneys, of counsel), for
the People.

Michael J. Pelletier and Marc Davidson, both of State Appellate De-
fender's Office, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:
Following a bench trial, defendant Robert Barry was found guilty
of two counts of aggravated battery and sentenced to serve a 30-
month probation conditioned upon periodic imprisonment. Following a

hearing, the court granted defendant's post-conviction motion. The State appeals from the order of the circuit court of Cook County which granted defendant's post-conviction motion for a new trial based on ineffective assistance of counsel. We affirm.

At trial, the State presented the testimony of Patricia Breason, Caroline Ganshir and Kimber Friedrich. On the evening of August 3, 1986, at approximately 10:30 p.m., the three young women went to a party at a friend's house. While they were waiting in line to get a beer, Patricia heard someone make a comment about all of the hairspray in Kimber's hair. When Patricia turned around to see who the speaker was, she saw defendant standing with a group of his friends. The young women ignored the comment and walked away. Later, while Patricia, Kimber and Caroline were talking with a group of friends, someone from defendant's group lunged into Caroline, causing her to spill her drink. Caroline turned around and asked aloud if she was being threatened, and someone from the group raised his hand at her and responded, "[Y]ou damn right, I am threatening you, you f---ing bitch." Caroline asked her friend's brother, who was hosting the party, to tell defendant and his friends to leave. Eventually, defendant and his friends left the party.

Patricia, Caroline and Kimber left the party 10 to 15 minutes after defendant departed. As the young women approached Kimber's car, they heard somebody from defendant's car yell, "[H]ey, you f---ing whore." Patricia went up to the car which was parked just ahead of them to see who was calling her names, and she observed defendant in the front passenger seat. Patricia noticed a young woman in the driver's seat and two young men in the back seat. Patricia went over to defendant, pointed her finger at him and asked him why he was calling her and her friends names. Patricia testified that defendant reached out of the car and slapped her twice. Patricia tried to hit defendant but missed. Defendant opened the car door, knocking Patricia to the ground. Patricia got up and walked toward Caroline and Kimber, who were standing by Kimber's car. Patricia testified that defendant came up behind her, grabbed her from the back of the neck, turned her around, got on top of her and started punching her in the face.

Caroline tried to get defendant off of Patricia by striking him with her shoe, but was unsuccessful. Patricia got free, and Caroline attempted to get a can of hairspray from her purse, but defendant grabbed her hand and flung her purse across the street. Patricia crossed the street and held her face because she could not move her jaw. Kimber followed defendant to his car to try to prevent him from

leaving, but defendant got into the car and started rolling up the window. Kimber put her hand in the window, and defendant rolled the window up on her thumb, cutting it. Defendant exited the car and began to punch Caroline with a closed fist. While defendant was punching Caroline, a van pulled up and two men got out, pulled defendant off of Caroline and started punching him. Defendant returned to his car and the driver drove away. Patricia was later treated in the hospital emergency room for a sprained ankle and broken jaw.

Defendant testified in his own behalf and stated that on the night of the party while he was sitting in a parked car with his friends, a girl walked up to him and started yelling, "[W]hat's your problem[?]" Defendant testified that nobody had yelled at her before she approached the car and that she started slapping and punching him. He further testified that he blocked her with his hands and then pushed her away. Defendant stated that he opened the car door and that as he brought his head out of the doorway, he was sprayed with something. Defendant continued to get out of the car and was sprayed again. The substance entered his eyes, nose and mouth, burning his face, eyes, and skin. Defendant testified that he put his head down, covered his face and started swinging in the direction of the spray. Defendant made contact with something or someone, twisted and fell to the ground. Defendant then got up and swung and hit someone again. Defendant returned to the car and got inside, while still being sprayed with the substance. He rolled up the window and they drove away. Two of the persons in the car with defendant both testified that defendant was sprayed with a substance before he started striking the young women.

Defendant's girlfriend, the driver of the car, testified that they all went to McDonald's after the incident to help defendant wash the substance off of his face. She further testified that the yeast-like substance was all over the passenger car window. On May 19, 1987, the court found defendant guilty of two counts of aggravated battery.

On June 17, 1987, defendant's trial counsel filed a motion to reopen defendant's case in chief on the grounds of newly discovered evidence and a motion for a new trial. On July 1, 1987, the court denied the two post-trial motions and sentenced defendant to serve a 30-month probation conditioned upon periodic imprisonment. On July 22, 1987, defendant, by newly appointed counsel, filed a motion which was captioned, "Emergency Motion to Vacate Judgment of Convictions and to Take Additional Evidence or in the Alternative to Grant a New Trial Based Upon Ineffective Assistance of Counsel." On August 7, 1987, the court conducted a hearing on defendant's motion

wherein it heard additional testimony from defendant, Donald DeBat, and defendant's trial counsel. At the conclusion of the hearing, the court found that defendant's trial counsel should have investigated and interviewed Mr. DeBat and two McDonald's employees whose testimony was consistent with defendant's theory of defense. Based on its findings concerning the availability of these witnesses and their credibility, the trial court concluded that the reliability of the outcome of the trial was undermined. The court entered an order vacating the judgment of conviction and granting defendant a new trial. From this order the State appeals.

First we will address the defendant's motion to dismiss the State's appeal which was taken with the case. Defendant argues that the State's appeal should be dismissed because it was taken from the court's order which granted his post-trial motion for a new trial, which is not an appealable order. The State responds that its appeal is taken from the court's order which granted defendant's post-conviction petition. Because of the reasons which follow, we deny defendant's motion to dismiss the State's appeal.

Section 116—1 of the Code of Criminal Procedure of 1963 provides:

> "Motion for a new trial. (a) Following a verdict or finding of guilty the court may grant the defendant a new trial.
>
> (b) A written motion for a new trial shall be filed within 30 days following the entry of a finding or the return of a verdict. Reasonable notice of the motion shall be served upon the State.
>
> (c) The motion for a new trial shall specify the grounds therefor." Ill. Rev. Stat. 1987, ch. 38, par. 116—1.

■ The above-quoted statute relating to motions for a new trial provides that such motions "shall" be filed within 30 days following the entry of a verdict or finding of guilty. The time limitations are mandatory and not directory. (*People v. Dzielski* (1970), 130 Ill. App. 3d 581, 586, 264 N.E.2d 426, 429.) In the present case, defendant was found guilty of aggravated battery on May 19, 1987. Therefore, the "Emergency Motion" filed on July 22, 1987, cannot be construed as a timely motion for a new trial since it was filed more than 30 days after entry of the court's finding of guilty. In addition, since it is clear from the record that the State objected to the timeliness of the motion and its treatment as a motion for a new trial, the motion cannot be considered timely under the revestment doctrine. See *People v. Hubbard* (1988), 170 Ill. App. 3d 572, 576, 524 N.E.2d 1263, 1265-66.

The only logical construction which would preserve the court's jurisdiction of the defendant's case following sentencing is to treat

the inappropriately captioned motion as a post-conviction petition. The treatment of defendant's motion as a post-conviction petition is supported by the fact that it raised constitutional issues and was made after sentencing. (See Ill. Rev. Stat. 1987, ch. 38, par. 122—1.) We therefore conclude that the July 22, 1987, "Emergency Motion" was properly considered by the court to be a post-conviction petition. Because appeals from the final judgment of the circuit court in post-conviction proceedings are allowed as of right, defendant's motion to dismiss the State's appeal is denied. 107 Ill. 2d R. 651(a).

On appeal, the State argues that the trial court erred in sustaining defendant's post-conviction motion based on ineffective assistance of counsel because defendant failed to demonstrate either that his trial counsel's assistance was unreasonable or that he was prejudiced by the alleged deficiencies in his counsel's performance. We disagree.

■ The constitutionally guaranteed assistance of counsel has not been provided if the defendant can prove that counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to deprive the defendant of a fair trial with a reliable result. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255.) The defendant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Albanese*, 104 Ill. 2d at 525.) Failure to adequately prepare for trial, including failure to conduct an investigation and interview witnesses, has been held to constitute inadequate representation by counsel. (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 21, 302 N.E.2d 3, 4.) The failure to interview witnesses may indicate actual incompetence, particularly when the witnesses are known to trial counsel and their testimony may be exonerating. *People v. Greer* (1980), 79 Ill. 2d 103, 123, 402 N.E.2d 203, 212.

■ In the present case, at the post-conviction hearing, defendant's trial counsel testified that defendant told him that Mr. DeBat observed him on the evening of the incident and saw red marks on his skin as well as a substance on the car window. However, defendant's trial counsel did not interview Mr. DeBat before trial. Trial counsel testified that he attempted to telephone DeBat at his office, but was unable to contact him. Defendant's trial counsel did not contact Mr. DeBat at home or subpoena him for trial. At the hearing on defendant's motion for a new trial, DeBat testified that when defendant entered his home on the evening of the incident, his face, neck and upper body were red.

Defendant's trial counsel also testified that he was informed by

defendant prior to trial that he and his friends went to a McDonald's restaurant following the incident to wash a substance from his face and eyes. Defendant also informed his trial attorney that they encountered two McDonald's employees, one of whom was an off-duty police officer who gave defendant a cloth for his eyes. However, defendant's attorney did not attempt to ascertain the names of the McDonald's employees or interview them prior to trial. Following trial, defendant's trial counsel sent an investigator to McDonald's who was able to locate and interview two witnesses whose testimony would corroborate defendant's theory of defense.

At the conclusion of the hearing, the trial court found that the testimony of DeBat and the McDonald's employees was consistent with defendant's theory of defense. The court further found that the witnesses were readily available and should have been interviewed. The court concluded that the failure to interview the witnesses was not a trial strategy. Based on these findings, the trial court concluded that the reliability of the outcome of the trial was undermined.

We concur in the trial court's findings. It is clear from the record that central to the court's determination of defendant's guilt was that it found "nothing which raises any doubt *** that there was no mace used by any of the three girls." Because the issue of whether or not defendant was maced either before or after he struck the victims was central to the court's determination, his trial counsel's failure to interview and present at trial witnesses whose testimony would corroborate his theory of defense resulted in a failure on counsel's part to meet the objective standard of reasonable competence. In particular, we find that the disinterested testimony of the McDonald's employees would have assisted the court in making a determination as to both the victims' and defendant's credibility. We therefore conclude that, but for trial counsel's failure, the outcome of the proceeding may have been different.

For all of the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CERDA, P.J., and WHITE, J., concur.