(No. 86183

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANTONIO SEGOVIANO, Appellee.

*Opinion filed February 17, 2000.*

230

232

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Theodore Fotios Burtzos, Alan J. Spellberg and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Following a trial in the circuit court of Cook County, a jury convicted defendant, Antonio Segoviano, of one count of first degree murder on an accountability theory (720 ILCS 5/9—1(a)(3) (West 1992)), and two counts of attempted armed robbery (720 ILCS 5/8—4, 18—2 (West 1992)). After vacating one of the attempted armed robbery convictions based on insufficiency of the evidence, the circuit court sentenced defendant to concurrent terms of 45 years' imprisonment for the first degree murder conviction and 15 years' imprisonment for the remaining conviction for attempted armed robbery. The appellate court reversed defendant's convictions and

remanded the matter for a new trial, holding that the trial court abused its discretion in failing to declare a mistrial when it was discovered during trial that the testimony of one of the State's occurrence witnesses was perjurious. 297 Ill. App. 3d 860. We granted the State's petition for leave to appeal (177 Ill. 2d R. 315(a)) and now reverse the appellate court and reinstate defendant's convictions.

## BACKGROUND

On November 9, 1993, at approximately 4:30 p.m., Onesimo Beltran and Martin Alvarez, the homicide victim, drove their truck into an alley near a currency exchange where the victim intended to purchase a City of Chicago vehicle sticker. Beltran waited in the truck with the door open, removing the old sticker from the windshield, while the victim went into the exchange.

Before the victim returned, a person later identified as defendant approached Beltran and asked him for money. Beltran closed the door, and defendant walked away, towards the mouth of the alley. Shortly thereafter, Beltran heard gunshots from behind the truck, and saw people scatter away from the victim. Beltran was uncertain whether defendant was among the people he saw running away from the victim, although he testified that defendant had walked in that direction after asking him for money. The victim died as the result of a single gunshot wound to the back.

Steven Schoenberg, the manager of the currency exchange, testified that while the victim was in the exchange defendant entered and began scribbling on the wall near one of the windows. Defendant followed the victim out of the exchange. Schoenberg testified that what was written on the wall of the exchange where defendant had been standing was "Little Cap or Little Capone." Chicago Police Officer Thomas Taglioli testified that he had seen graffiti around the neighborhood with

defendant's name on it and that the graffiti in the currency exchange was written the way that defendant wrote his name.

Mario Rodriguez testified that shortly before the crime he, defendant, Arnel Robinson, and "J.J." were at a bank of telephones located near the currency exchange. Rodriguez did not know "J.J."'s real name, but he knew defendant and knew that his nickname was "Little Cap," short for "Little Capone." While "J.J." was using the telephone, Rodriguez heard defendant ask Robinson if he wanted to "get some money." Robinson agreed, lifted his shirt, and adjusted a gun in his waistband. Defendant said he would "find someone" and walked over to the currency exchange while Robinson went to the alley nearby. In Rodriguez's written statement, which was introduced into evidence, he stated that defendant had said that he would find "someone to rob."

Rodriguez testified that a few minutes later defendant followed the victim out of the exchange and into the alley, out of Rodriguez's view. Rodriguez next heard Robinson shouting "give me your money." Rodriguez walked over to the alley, where he saw Robinson pointing a gun at the victim and saw defendant next to the truck. At this point Rodriguez panicked and walked back towards the telephones. As he was walking away he heard two shots, and he left the area. He did not see where the defendant or Robinson went.

The State's next witness represented that his name was Jerome Lewis, and that he went by the nickname "J.J." The witness testified that he was with defendant, Rodriguez, and Robinson at the time of the shooting. He stated that defendant asked Robinson to help him "stick up the Mexican guy," and Robinson agreed. Defendant thereafter followed the victim into the currency exchange, ducked back out for a moment, holding his hand over his head, then reentered the currency exchange. When the

victim left the exchange defendant followed him into the alley where Robinson was waiting. A short while later "J.J." heard two gunshots in the alley, then saw defendant exit the alley.

On cross-examination "J.J." initially testified that his name was Stacy Lewis, and that his older brother was named Jerome, but that they were both known as "J.J." He later stated that his brother's name was Stacy and his own name was Jerome.

The State proceeded to introduce into evidence statements defendant made to police after his arrest. Defendant gave an oral statement to Chicago Police Detective Steven Glynn and signed a written statement in the presence of Assistant State's Attorney Margaret Wood. In each statement, defendant admitted that he had suggested to Robinson that they "make some money" and that they planned to have defendant follow a man out of the currency exchange and have Robinson rob him in the alley. Defendant admitted scratching his nickname on the wall of the currency exchange while waiting for the victim, then following the victim into the alley. In the alley, Robinson grabbed the victim while defendant approached the truck parked in the alley. Defendant demanded money from Beltran, but was told that he had no money. As he walked back to where Robinson was confronting the victim, defendant heard two shots and then ran from the area along with Robinson.

The next several events occurred outside the presence of the jury. Defendant contended that the State's witness who had testified as Jerome Lewis was in fact Stacy Cueto, Lewis' brother. To support this allegation, defendant called as a witness the real Jerome Lewis, who testified that Cueto sometimes used Lewis' name. After hearing Lewis' testimony, the trial court recessed for the day and directed the State to ascertain who was in fact Jerome Lewis by the next day, when the case would be recalled.

When court reconvened, the prosecutor informed the trial court that the person who had previously testified at trial was Cueto. According to the prosecutor, Cueto had admitted his identity when the prosecutor confronted him. Cueto informed the prosecutor that he had testified instead of Lewis because he thought Lewis might "run into some problems" if he testified, whereas Cueto believed he would be safe because he was incarcerated in Minnesota. The prosecutor confirmed that Cueto was not the person at the scene by asking Rodriguez to view him; Rodriguez stated that Cueto was not the "J.J." who was present at the time of the crime. However, the prosecutor maintained that the State had no knowledge of the fact that Cueto was not "J.J." until the defense raised that possibility.

Based on these events the State moved for a mistrial. Defendant opposed the State's motion, arguing that the proper course was not to grant a mistrial, but rather to explain to the jury what had occurred and direct the jury to disregard the evidence. He contended that "it would be a jeopardy issue" if the court declared a mistrial. The court declined to declare a mistrial, stating that "[a]t this time the trial in my opinion has not been reduced to a farce and a sham."

The jury was recalled, and the State admitted that the person who had testified was not Jerome Lewis but rather was his brother. Accordingly, the State requested leave of court to withdraw the earlier testimony and asked the court to instruct the jury to disregard it. The court struck the testimony and directed the jury "to disregard completely all the testimony that this person from Minnesota penitentiary said and completely disregard that."

The State then called the real Jerome Lewis to testify. Lewis stated that he was with defendant, Robinson and Rodriguez at the scene of the shooting several minutes

before the shooting occurred. However, Lewis testified that defendant was standing next to him at the pay telephones when they heard the two shots. He stated that he and defendant had parted ways with Robinson and Rodriguez three to five minutes before.

The State proceeded to introduce as evidence a written statement Lewis had given to the police shortly after the crime. Therein, Lewis stated that he, Robinson, Rodriguez and defendant were at the pay telephones when he "heard [defendant] talk about robbing a guy who had just gone in the currency exchange." Robinson agreed to commit the robbery with defendant. Defendant then went into the exchange and came back out holding up five fingers "to indicate $500." He then reentered the exchange and shortly thereafter followed the other man into the alley, towards Robinson. A short while later, Lewis heard two gunshots coming from the alley and saw Robinson and defendant leaving the alley, after which Lewis left the area.

After the State rested, the defense presented the testimony of James Stilwell. Stilwell testified that he had been drinking with Robinson and Lewis at the home of a Raphael Martinez earlier in the day of the shooting. He testified that he was in the alley at the time of the shooting and saw Robinson and Rodriguez in the alley, but not defendant. Afterwards, Robinson and Rodriguez returned to Martinez's house, where Robinson claimed he had shot someone. Stilwell was impeached with a signed statement he had given to an assistant State's Attorney and with his testimony before the grand jury. In both his statement and his grand jury testimony Stilwell claimed that it was Robinson and defendant who had returned to Martinez's house claiming that they had shot someone. Defendant's mother also testified that she was in the area at the time of the shooting and that defendant was not in the alley when the shooting occurred.

The jury found defendant guilty of first degree murder and of two counts of attempted armed robbery on August 24, 1995. Defendant filed a post-trial motion on September 26, and filed an amended motion on September 28. The court reversed defendant's conviction for attempted armed robbery of Beltran "based on the sufficiency of the evidence," but otherwise denied defendant's post-trial motion.

Defendant appealed his convictions, and the appellate court reversed and remanded for a new trial, holding that the trial court had abused its discretion in failing to grant the State's motion for a mistrial. 297 Ill. App. 3d at 867.

## ANALYSIS

### I. Direct Appeal

The State contends that the appellate court erred in granting defendant a new trial based on the trial court's failure to declare a mistrial. Relying primarily on *United States v. Andrews*, 895 F.2d 406, 409 (7th Cir. 1990), and *People v. Allen*, 268 Ill. App. 3d 279, 287 (1994), the State contends that the trial court acted correctly in allowing the case to proceed in light of defendant's opposition to the State's motion for a mistrial. The State suggests that, moreover, defendant's stance at trial should bar him from arguing on appeal that the trial court erred in failing to declare a mistrial.

The Seventh Circuit in *Andrews* and our appellate court in *Allen* held that a criminal defendant who opposed a declaration of mistrial during the trial proceedings would not be heard on appeal to complain of the failure to declare a mistrial over his own objection. *Andrews*, 895 F.2d at 409; *Allen*, 268 Ill. App. 3d at 287. In each case the trial court and counsel learned during jury deliberations that the jury had inadvertently been allowed to see police reports containing inadmissible infor-

mation. Although the trial courts were prepared to grant mistrials in both cases, the defendants indicated that they wished their cases to be decided by their current juries after admonitions to consider only the evidence presented at trial. After being found guilty, defendants raised as error on appeal the failure to declare a mistrial. Both courts rejected the argument on the basis that a criminal defendant would be required to abide by the decisions made at trial (*Allen*, 268 Ill. App. 3d at 287; *Andrews*, 895 F.2d at 409), although the *Andrews* court noted in *dictum* that in an appropriate case a court might have to declare a mistrial even over a defendant's objection. See *Andrews*, 895 F.2d at 409, quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165, 165 (1824) (stating that such an exception would exist only in a case involving an error so grave that there existed a " 'manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated' ").

Defendant attempts to distinguish *Allen* and *Andrews*. He first contends that the type of error which occurred in the instant case—admission of perjured testimony—is so serious as to make *Allen* and *Andrews* inapposite. However, defendant cites no precedent to support his contention, nor do *Allen* and *Andrews* make any distinction based on the type of error involved. Rather, the sole consideration is, as previously noted, that the gravity of an error may be so great as to mandate a mistrial even over a defendant's objection. See *Andrews*, 895 F.2d at 409. We decline to hold, as defendant suggests, that the *type* of error involved is determinative of whether the trial court should override an accused's opposition to the court's declaring a mistrial.

Defendant also attempts to distinguish *Allen* and *Andrews* on the basis that in those cases it was clear that the client, rather than counsel, made the decision to reject the mistrial. Defendant argues that the record in

this case is not so clear. We agree with defendant that the record before us does not show that defendant personally made the decision to reject the mistrial. As the State observes, defendant may well have known that Cueto was an impostor and so informed his counsel during Cueto's testimony, since counsel immediately began cross-examining the witness concerning his identity. However, we do not believe that these facts raise the inference that defendant himself made the decision to reject the mistrial.

Nevertheless, this decision is not one which must be made by a criminal defendant. The only trial-related decisions over which a defendant ultimately must have control are: whether to plead guilty; whether to waive a jury trial; whether to testify in his own behalf; whether to appeal; and whether to submit a lesser-included offense instruction. *People v. Brocksmith*, 162 Ill. 2d 224, 227-29 (1994); *People v. Davison*, 292 Ill. App. 3d 981, 988 (1997). Decisions whether to seek a mistrial, by contrast, are matters of trial strategy. See *People v. Cordevant*, 297 Ill. App. 3d 193, 200 (1998); *People v. Steward*, 295 Ill. App. 3d 735, 745 (1998). We find no basis for adopting defendant's suggestion that the decision to oppose a mistrial is in effect a decision to waive a jury trial, and we will not vitiate the objection to the mistrial on the basis that the record does not reflect that the decision was made by defendant. We note that a defendant still retains the ability to raise on appeal an ineffective-assistance challenge to counsel's decision to oppose a mistrial, as defendant in fact does in this case.

We find no basis upon which to ascribe error to the trial court for declining to declare a mistrial in this case. When the State suggested a mistrial after discovering that Cueto's testimony was perjurious, defendant strongly objected to such a course of action, demanding that the trial continue after an instruction to the jury to

disregard the perjurious testimony. As noted by the *Allen* court, it is well established that "an accused may not ask the trial court to proceed in a certain manner and then contend in a court of review that the order which he obtained was in error." *People v. Lowe*, 153 Ill. 2d 195, 199 (1992). Accord *People v. Abston*, 263 Ill. App. 3d 665, 671 (1994) ("where the trial court's course of action is taken at defendant's suggestion and the defendant thereafter acquiesces in the court's expressed course of conduct, the defendant should be precluded from raising such course of conduct as error on appeal").

Nor did the trial court err in failing to declare a mistrial over defendant's objection. This drastic course of action should be taken only " '[w]here, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial.' " *People v. Chaffin*, 49 Ill. 2d 356, 362 (1971), quoting *Gori v. United States*, 367 U.S. 364, 368, 6 L. Ed. 2d 901, 904, 81 S. Ct. 1523, 1526 (1961). See also *Illinois v. Somerville*, 410 U.S. 458, 462-63, 35 L. Ed. 2d 425, 430, 93 S. Ct. 1066, 1069-70 (1973) (a mistrial should be declared over a defendant's objection only if "dictated by 'manifest necessity' or the 'ends of public justice' "). The trial court's evaluation of whether this threshold has been reached is reviewed only for abuse of discretion (*Arizona v. Washington*, 434 U.S. 497, 514, 54 L. Ed. 2d 717, 733, 98 S. Ct. 824, 834-35 (1978); *Chaffin*, 49 Ill. 2d at 362), and must be afforded the "highest degree of respect," as the trial court "is far more 'conversant with the factors relevant to the determination' than any reviewing court can possibly be" (*Washington*, 434 U.S. at 511, 514, 54 L. Ed. 2d at 732, 733, 98 S. Ct. at 833, 834, quoting *Wade v. Hunter*, 336 U.S. 684, 689, 93 L. Ed. 974, 978, 69 S. Ct. 834, 837 (1949)).

In this case, although at first glance Cueto's testi-

mony might appear quite damaging, several facts militate against this conclusion. First and foremost is the fact that the perjury was discovered during the trial and strong steps were taken to correct it. "Faith in the ability of a properly instructed jury to separate issues and reach a correct result is the cornerstone of the jury system." *People v. Illgen*, 145 Ill. 2d 353, 376 (1991). It is true that the perjury was not withdrawn until two days after it had been offered. However, not only was the jury clearly, directly, and unequivocally instructed to disregard Cueto's testimony, the jury was presented with the testimony of the real Jerome Lewis, which would also naturally have helped to dispel any lingering belief in the impostor. The prosecution did not refer to the false testimony in closing argument except to apologize for having offered it.

Also, Cueto's testimony was entirely cumulative of other evidence at trial. Specifically, defendant's oral statement to detective Glynn and defendant's signed statement, Rodriguez's testimony and signed statement, and, most significantly, the real Lewis' signed statement were all nearly identical to each other and to the version of events testified to by Cueto. All of this evidence established that defendant knew that Robinson had a weapon, defendant and Robinson agreed to commit a robbery, and defendant followed the victim into the currency exchange and shadowed him into the alley, where he was shot. This testimony was completely consistent with the testimony of Beltran and Schoenberg.

Defendant argues that Cueto's testimony was prejudicial because the only evidence that defendant explicitly suggested a robbery was Cueto's testimony and the real Lewis' written statement. Defendant argues the other evidence only showed that defendant suggested "getting some money." However, our review of the evidence reveals that defendant's and Rodriguez's written state-

ments also established that defendant and Robinson agreed to commit an armed robbery.

II. Cross-Appeal

Defendant raises three issues on cross-appeal. He asserts that (1) the trial court erred in denying his pretrial motion to quash arrest and suppress statements; (2) the court abused its discretion in denying defense counsel's motion to withdraw and for a continuance; and (3) he received ineffective assistance of counsel.

The State argues that the first two issues defendant raises on cross-appeal should be rejected on the basis of waiver. As the State observes, defendant's post-trial motion was filed beyond the 30-day deadline imposed by the legislature. See 725 ILCS 5/116—1(b) (West 1992). The State argues that the untimeliness of the motion should waive issues for purposes of appellate review in the same manner as a failure to file any post-trial motion. Defendant argues that the issues were not waived, and argues in the alternative that if they were waived, the tardy filing of the post-trial motion constitutes ineffective assistance by his trial counsel.

The statutory 30-day requirement is mandatory. *People v. Stacey*, 68 Ill. 2d 261, 267 (1977); *People v. Barry*, 202 Ill. App. 3d 212, 215 (1990). It could be argued that an untimely filing operates as a procedural default just as does a failure to comply with the statutory requirement that post-trial motions be in writing. See *People v. Enoch*, 122 Ill. 2d 176, 187-88 (1988); *People v. Friesland*, 109 Ill. 2d 369, 377 (1985) (and cases cited therein); *People v. Schrems*, 224 Ill. App. 3d 988, 994 (1992). However, the waiver rule is one of administrative convenience rather than jurisdiction, and the goals of obtaining a just result and maintaining a sound body of precedent may sometimes override considerations of waiver. *People v. Farmer*, 165 Ill. 2d 194, 200 (1995); *Hux v. Raben*, 38 Ill. 2d 223 (1967).

244

Accordingly, since in this case the issues were in fact brought to the attention of the trial court, ruled on by the trial court while the trial court had jurisdiction over the matter, and involved the potential of substantial prejudice to the defendant, we choose to relax the waiver rule and address the merits of defendant's cross-appeal.[1] See *People v. Talach*, 114 Ill. App. 3d 813, 818-19 (1983); *People v. Evans*, 80 Ill. App. 3d 444, 454 (1979).

Defendant first claims that the trial court erred in denying his pretrial motion to quash his arrest and suppress his statements at the police station as the product of an unlawful arrest.

Defendant asserts that the trial court erred in concluding that Martha Jacquez, an acquaintance of defendant, gave the police consent to enter her home, where defendant was arrested without a warrant. This claim merits but brief discussion, because it is irrelevant whether Jacquez gave consent. Prior to defendant's arrest, Rodriguez had identified defendant to the police as having been involved in the shooting, and defendant does not controvert that this gave the police probable cause to arrest him. This renders irrelevant Jacquez's consent. Even an arrest made during a warrantless nonconsensual entry of a home does not vitiate a defendant's subsequent custody nor does it require suppression of a defendant's subsequent voluntary statement outside the home, so long as the authorities had probable cause to arrest the suspect. *New York v. Harris*, 495 U.S. 14, 18-21, 109 L. Ed. 2d 13, 21-22, 110 S. Ct. 1640, 1643-45 (1990); *People v. Shelby*, 221 Ill. App. 3d 1028, 1041 (1991); *People v. Long*, 208 Ill. App. 3d 627, 635 (1990). Accordingly, there is no merit to defendant's argument that the trial court erred in denying the motion.

---

[1]Waiver would not in any event preclude consideration of defendant's appellate claims that he received ineffective assistance of trial counsel. See *People v. Friesland*, 109 Ill. 2d 369, 375 (1985).

Defendant's second argument, that the trial court erred in denying defense counsel's pretrial motion to withdraw from the case and obtain a 21-day continuance to seek substitute counsel, is also without merit. The determination whether to grant a continuance for substitution of counsel is a matter left to the discretion of the trial court, and will not be overturned absent an abuse of that discretion. *People v. Howery*, 178 Ill. 2d 1, 49 (1997); *People v. Friedman*, 79 Ill. 2d 341, 347-48 (1980). The factors to be considered in evaluating a trial court's exercise of its discretion include the diligence of the movant, the right of the defendant to a speedy, fair and impartial trial, and the interests of justice. *Friedman*, 79 Ill. 2d at 347; *People v. Coleman*, 203 Ill. App. 3d 83, 100 (1990). However, it is well established that a trial court will not be found to have abused its discretion in denying a motion for substitution of counsel in the absence of ready and willing substitute counsel. *People v. Hardin*, 299 Ill. App. 3d 33, 37 (1998); *People v. Jones*, 269 Ill. App. 3d 925, 932 (1995); *People v. Langley*, 226 Ill. App. 3d 742, 747 (1992); *People v. Free*, 112 Ill. App. 3d 449, 454 (1983); *People v. Koss*, 52 Ill. App. 3d 605, 607-08 (1977). In this case, the motion did not even contain a representation that substitute counsel had been secured, much less an averment that such substitute counsel was ready and willing to enter an appearance in the case. The trial court thus did not abuse its discretion in denying the motion.

Defendant's final argument on cross-appeal is that he received ineffective assistance of counsel. In this argument defendant raises three specific allegations of error: counsel's failure to file the motion for new trial in timely fashion; counsel's failure to object to the State proceeding on the charge of attempted armed robbery of Beltran; and counsel's opposition to the State's mistrial motion.

To demonstrate ineffective assistance of counsel, defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that the attorney's deficient performance resulted in prejudice to defendant. *People v. Williams*, 181 Ill. 2d 297, 320 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). The failure to satisfy either element of the test will preclude a finding of ineffective assistance of counsel. *Williams*, 181 Ill. 2d at 320. To establish prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Munson*, 171 Ill. 2d 158, 184-85 (1996). However, showing prejudice entails more than an "outcome-determinative" test: a defendant "must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *People v. Evans*, 186 Ill. 2d 83, 93 (1999), citing *People v. Griffin*, 178 Ill. 2d 65, 74 (1997).

Defendant's first allegation of ineffective assistance concerns the belated filing of the motion for a new trial. With regard to this claim we note initially that the trial court considered the merits of the motion. Accordingly, the only manner in which defendant could show prejudice would be if the tardy filing waived any of his claims on appeal and if any claims which were waived would otherwise have been found to be meritorious on appeal. If the claims were without merit defendant could not show prejudice even if they were waived, and he thus would be entitled to no relief on this claim of ineffective assistance. See *Williams*, 181 Ill. 2d at 320-22 (considering merits of issues in order to determine that counsel was not ineffective for having failed to preserve them); *Enoch*, 122 Ill. 2d at 202 (rejecting claim that trial counsel was ineffective for failing to preserve trial errors

for appellate review because "it cannot be reasonably contended that the results would possibly have been different but for the alleged substandard representation by counsel"). The two claims which were potentially waived by the late filing of the post-trial motion are defendant's claims on cross-appeal regarding the trial court's denial of his two pre-trial motions. As we have previously discussed, these two claims are without merit. Accordingly, defendant cannot satisfy the prejudice prong of the *Strickland* analysis on his claim that counsel was ineffective in his untimely filing of the post-trial motion. *Enoch*, 122 Ill. 2d at 201-02. Defendant is therefore entitled to no relief on this claim. *Williams*, 181 Ill. 2d at 320.

Defendant also contends that trial counsel was ineffective in failing to object to the jury being allowed to find him guilty of the attempted armed robbery of Beltran, which charge the State had nol-prossed before trial. Again, defendant can show no prejudice. Although the jury did return a guilty verdict on the charge of the attempted armed robbery of Beltran, the trial court reversed this conviction "based on the sufficiency of the evidence" and the State subsequently nol-prossed this charge. Defendant does not stand convicted of this charge, nor can he hereafter be tried for this attempted armed robbery. See *People v. Daniels*, 187 Ill. 2d 301, 312 (1999), citing *People v. Blake*, 287 Ill. App. 3d 487, 491 (1997).

Nor do we find counsel to have been ineffective for opposing the State's motion for a mistrial after the revelation of Cueto's perjury. At oral argument before this court defense counsel contended that trial counsel was "*per se* ineffective" in suggesting in opposition to the mistrial that if a mistrial was declared, "it would be a jeopardy issue," *i.e.*, the constitutional prohibition against double jeopardy might prevent defendant's retrial. Appellate counsel suggests that if trial counsel

was correct, a declaration of mistrial would have secured defendant's freedom, which is the job of defense counsel. This contention may be briefly answered, in that if defendant had consented to, or even merely failed to object to the mistrial, double jeopardy would not have barred his reprosecution unless by its conduct the prosecution had deliberately sought to cause a mistrial. *People v. Camden*, 115 Ill. 2d 369, 376-79 (1987); *People v. Roche*, 258 Ill. App. 3d 194, 199 (1994). Defendant has never alleged that the State deliberately introduced perjurious testimony in order to cause a mistrial, nor would the record on appeal support such an accusation. Accordingly, had defense counsel failed to object to the mistrial, defendant's reprosecution would not in fact have been barred.

Moreover, as we have previously discussed, the decision whether to seek a mistrial is a matter of trial strategy. *Cordevant*, 297 Ill. App. 3d at 200; *Steward*, 295 Ill. App. 3d at 745. Counsel has the ultimate authority to direct trial strategy and we will generally not sustain a claim of ineffectiveness of counsel based on inadequate trial strategy except where counsel "entirely fails to conduct any meaningful adversarial testing." *People v. Guest*, 166 Ill. 2d 381, 394 (1995). The strategy of opposing the mistrial instead of attempting to argue reasonable doubt by highlighting the State's accidental introduction of perjurious testimony, can hardly be said to have constituted a lack of meaningful adversarial testing. The testimony of Cueto was struck in its entirety and defense counsel effectively used the State's presentation of the impostor's testimony to cast doubt on the State's case in closing argument. In this respect we note the following excerpts from that argument:

> "You also heard from a witness who got on the stand and said, my name is Jerome Lewis. They call me J.J. ***
> The only problem was this witness was incarcerated at

the time of the shooting. He wasn't even in the City of Chicago at the time of the shooting.

\* \* \*

Now, I'm not Johnny Cochran, and I'm not going to stand up here to say this is some big police conspiracy to frame [defendant]. Because I wouldn't insult your intelligence, and it's clear that that would be ridiculous.

It's not a conspiracy to frame [defendant], but what it is, it's sloppiness. It's carelessness. It's the fact that [defendant] doesn't matter. He's a street punk. He lives in the projects. He can't afford to hire a team of investigators to investigate every witness that goes up there, to investigate every piece of evidence in the case. He can't. So why should they bother to be so thorough in a case like that?

\* \* \*

And you remember when I cross-examined him, we didn't know about his identity. He had used so many different names. How could the state just accept that this is the right guy that was there? They're willing to accept it because he's willing to take that script and come up there and testify according to the statements that implicated this guy, and that's what they care about.

And it's also significant to note that it's the defense in this case that uncovered that impostor. It's the defense that went out and found the real J.J.

And you know, what if the real J.J. had been out of town, or what if he had been unwilling to come down to court? You can bet your last dollar that the state's attorney would be up here saying that guy that testified, his name was Jerome Lewis, was credible, and you should use that evidence to convict this guy."

Counsel's strategic decision to oppose the mistrial, have the State confess error, and then use the error as a sword against the State would appear a fairly ingenious strategy, quite the contrary of a failure to test the State's case through a meaningful adversarial process.

## III. Remand

As a final issue, the State notes that because of its

ruling that defendant was entitled to a new trial, the appellate court failed to reach defendant's argument that his separate convictions for murder and armed robbery violated the one-act, one-crime doctrine (see *People v. King*, 66 Ill. 2d 551 (1977)). The appellate court also failed to reach the State's counter-argument that the trial court erred in failing to impose consecutive sentences as mandated by statute. These issues have not been briefed in this court. We therefore remand these issues to the appellate court for consideration.

## CONCLUSION

For the reasons above stated, we reverse the judgment of the appellate court and remand to the appellate court for consideration of the remaining issues.

*Appellate court judgment reversed;*
*cause remanded.*

JUSTICE RATHJE, specially concurring:

I agree with the majority's substantive disposition of the issues. I write separately because I cannot join the majority's unjustified expansion of the waiver rule.

The issue in contention is whether issues raised in an untimely post-trial motion are waived on appeal if the trial court, in its discretion, adjudicated the merits of the motion. In a somewhat convoluted analysis, the majority apparently agrees with the State and holds that defendant waived the issues raised in his cross-appeal because his post-trial motion was filed two days beyond the 30-day deadline. The majority concedes, however, that the trial court adjudicated the merits of the motion despite the motion's untimeliness. In my opinion, because the trial court adjudicated the merits of the motion, the issues raised therein are not waived.

For some reason, the majority purports to avoid this issue but then decides it. The majority claims that "[i]t *could be* argued that an untimely filing operates as a

procedural default." (Emphasis added.) 189 Ill. 2d at 243. After almost sounding like it is not going to decide the issue, the majority claims that it will relax the waiver rule. If the court is relaxing the waiver rule, then it must be holding that the issues are waived. If the issues are not waived, there is no need to relax the waiver rule.

There is no reason to purport to avoid this issue. On at least two occasions, this court has suggested that issues raised in an untimely post-trial motion are waived on appeal. See *People v. Robinson*, 157 Ill. 2d 68, 83 (1993); *People v. Scott*, 148 Ill. 2d 479, 528 (1992). However, the timeliness of the post-trial motions was not at issue in those cases. This case, unlike *Robinson* and *Scott*, directly presents the issue and gives this court the opportunity not to perpetuate an unsound rule.

In *Robinson*, this court stated that, to preserve issues for appeal, "the defendant must both contemporaneously object and present the issue in a *timely* post-trial motion." (Emphasis added.) *Robinson*, 157 Ill. 2d at 83. However, *Robinson* cited *People v. Enoch*, 122 Ill. 2d 176 (1988), which nowhere contains that statement. In *Enoch*, this court held that the failure to raise an issue in a *written* motion for a new trial results in waiver of the issue on appeal, not that the failure to raise the issue in a *timely* motion for a new trial results in waiver. *Enoch*, 122 Ill. 2d at 186. Further, the timeliness of the post-trial motion was not an issue in *Robinson*.

In *Scott*, the defendant argued that statements he made during court-ordered psychiatric examinations should have been suppressed. This court disposed of this argument by stating, "Because defendant did not raise this issue in the trial court, or include it in a timely filed post-trial motion, it is not clear from the record which statements were made by defendant during each particular interview. Therefore, defendant has waived appellate review of this issue." *Scott*, 148 Ill. 2d at 528. No citation

to authority follows this statement. Further, it seems clear that *Scott* was basing its waiver conclusion on the fact that defendant's argument was not made in the trial court. Neither *Robinson* nor *Scott* addressed the issue presented in this case, and in both cases the use of the word "timely" was unnecessary and unsupported by proper citations.

By suggesting that the timely filing of a post-trial motion is necessary to preserve issues for review, this confused two different concepts. First, written motions for a new trial must be filed "within 30 days following the entry of a finding or the return of a verdict." 725 ILCS 5/116—1(b) (West 1998). Second, issues must be raised first in a post-trial motion if a defendant wishes to argue those issues on appeal. *Enoch*, 122 Ill. 2d at 186. The majority seems to infer a relationship between these two propositions that simply does not exist. The majority cites no authority holding that issues raised in an untimely motion are waived on appeal if the trial court chooses, in its discretion, to adjudicate the merits of the motion.

Defendant had not yet been sentenced when the court considered and denied his motion. Consequently, the trial court retained jurisdiction over the action. As the appellate court noted in *People v. Talach*, 114 Ill. App. 3d 813, 818 (1983), the 30-day limitation applies to the defendant rather than to the court, and there is no jurisdictional bar to a court considering a late motion for a new trial when the court still has jurisdiction over the case.

The irony in the majority opinion is that the majority's purported reason for relaxing waiver is to "maintain a sound body of precedent." What sound body of precedent holds that issues raised in the trial court, presented in a written post-trial motion, adjudicated by the trial court, and properly argued on appeal are waived? This court stated the purposes of the waiver rule in *People v. Caballero*, 102 Ill. 2d 23, 31-32 (1984):

"Failure to raise issues in the trial court denies that court the opportunity to grant a new trial, if warranted. This casts a needless burden of preparing and processing appeals upon appellate counsel for the defense, the prosecution, and upon the court of review. Without a post-trial motion limiting the consideration to errors considered significant, the appeal is open-ended."

The appellate court has also recognized that "[t]he underlying purpose of waiver is to preserve finite judicial resources by creating an incentive for litigants to bring to trial courts' attention alleged errors, thereby giving trial courts an opportunity to correct their mistakes." *People v. McKay*, 282 Ill. App. 3d 108, 111 (1996).

Here, the purposes of the waiver rule are not served by holding that these issues are waived. Defendant raised the issues in a post-trial motion that was filed two days late. The trial court exercised its discretion to consider the motion despite its untimeliness. The trial court was given a chance to correct any errors. The issues were ruled on by the trial court before they were presented to this court, and the scope of this appeal was properly limited to issues that defendant raised in the trial court. I see no justification for this court now holding that these issues are waived.

The majority ultimately resolves the merits of defendant's cross-appeal issues by relaxing the waiver rule and considering whether defendant received the ineffective assistance of counsel when his attorney filed the post-trial motion two days late. I agree with the majority's resolution of the merits of these issues, but would reach the issues by holding that they are not waived.