**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph Mark ANDREWS,
Defendant–Appellant.**

No. 88–2953.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 27, 1989.

Decided Feb. 8, 1990.

As Amended Feb. 14, 1990.

Thomas M. Durkin, John N. Gallo (argued), Asst. U.S. Attys., Office of the U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Sheldon Nagelberg, Chicago, Ill., for defendant-appellant.

Before EASTERBROOK and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Joseph Mark Andrews, the defendant-appellant, appeals from the district court's entry of final judgment on the jury verdict finding him guilty of possession with intent

to distribute 698.7 grams of cocaine in violation of 21 U.S.C. § 841(a)(1).[1] On appeal, Andrews claims that the district court committed reversible error in failing to declare a mistrial over the defendant's objection. In addition, Andrews argues that his attorney's conduct was ineffective and deprived him of a fair trial because his attorney failed to maintain his motion for a mistrial over his client's own objection.[2] For the reasons discussed below, we affirm Andrews' conviction.

## I.

On March 21, 1988, soon after exiting from a train at Chicago's Union station, Joseph Mark Andrews was stopped by Officer Richard Boyle of the Chicago Police Department and Special Agent James Reed of the Drug Enforcement Administration (DEA). When asked for identification, Andrews produced a card identifying himself as "Joseph Mark." His one-way ticket, however, paid for in cash, was issued under the name "W. Johnson." After obtaining consent from Andrews, a search of the blue, nylon duffel bag he was carrying revealed its contents to include four packages containing a white powder. A subsequent analysis of the powder by DEA forensic chemist Ronald Wagenhoffer indicated that the packages contained 698.7 grams of nearly pure cocaine. Andrews was arrested and given his *Miranda* warnings. Through a custodial interrogation by DEA agent Norbert Kukstra, Andrews maintained his ignorance of the bag's illicit contents and indicated only that it must have been placed in his bag by a woman of Spanish descent.

Since Andrews' motion to quash his arrest and suppress the evidence of the cocaine found in his bag was denied by the district court, the government's case in chief was made out by the testimony of Officer Boyle, Agents Reed, Kuksta, and Wagenhoffer, and by the introduction of the seized cocaine. The defendant did not testify or present any witnesses or evidence. After listening to closing arguments and after being instructed by the district court, on June 7, 1988 at approximately 1:30 p.m. the jury retired to deliberate its verdict.

At 3:00 p.m., Judge Leinenweber summoned the government and defense counsel and read a disturbing note he received from the jury foreman which queried;

> Should we have the police investigative report of the case? We do have it and one of us has looked at it.

This report, which the government revealed was inadvertently placed by Officer Boyle in the duffel bag, was a clearly inadmissible DEA investigative report which not only detailed the statements made by Andrews in connection with his arrest, search and seizure but also revealed the existence of a swastika tattooed on Andrews' right forearm. Moreover, the duffel bag included the equally inadmissible transcript of Officer Boyle's testimony at the suppression hearing.

Though the investigative report and transcript of Boyle's testimony were clearly inadmissible and highly prejudicial to Andrews' cause, the defendant's counsel did not move for a mistrial but instead requested that the jury be brought out and an individual inquiry be made of the juror who saw the inadmissible report. This inquiry revealed, however, that, because key portions of the investigative report had been read aloud, all of the jurors heard parts of the inadmissible and prejudicial report.

As a final effort to avoid declaring a mistrial, Judge Leinenweber informed the jury of the report's inadmissibility and asked whether it was possible for the ju-

---

**1.** On September 19, 1988, Andrews was sentenced to a period of 78 months imprisonment and 4 years supervised release to run concurrent to the period of incarceration.

**2.** Though Andrews also argues on appeal that he was deprived of effective assistance of counsel at trial because his trial attorney was not a member of the federal trial bar in the United States District Court, Northern District of Illinois, as required by Local District Rule 3.10(c), a supplement to the record on appeal revealing that his trial counsel was in fact a member of the federal trial bar before the start of Andrews' trial disposes of this basis for the ineffective assistance of counsel claim.

rors to put what was read of the report out of their minds. Juror Stuart Ariewitz raised his hand indicating that he could not put the material out of his mind. After the jury was sent back to the jury room and the defendant conferred with his counsel, the defendant's counsel moved for a mistrial. The defendant himself then addressed the court and asked, "Why the jury can't give their decision?"

After Judge Leinenweber explained that the court could either start the trial over or proceed with cautionary instructions, the defendant stated;

> But me personally, I would like today to give their verdict, you know. It's what I tell him but he don't want to go by me because he is the attorney, you know.

Judge Leinenweber indicated that a choice had to be made, whereupon defense counsel repeated his motion for a mistrial. The government then stated that "in light of the statements by the one juror that he could not put out of his mind the material he had examined" they would not oppose the motion. The defendant's counsel then interrupted Judge Leinenweber as he was preparing to declare a mistrial and stated;

> Your Honor, before you continue, if I may interrupt you. My client is adamant about the fact that he wants the jury to go ahead and render a verdict.

The Court admonished the defendant:

> Mr. Andrews, do you understand that you will have to live with the verdict: If you do not want this jury discharged and start over again, then you are giving up any objection you have to the fact that this document inadvertently, incorrectly made its way into the jury room. Do you understand that: You can't raise it later. You can't say that was a mistake. You have to decide now whether you wish to start over so that this won't happen or you have a right, if you feel that it is in your best interest. Your lawyer doesn't think it is. I guess he has to be guided by your desires. He feels that it is in your best interests to have a mistrial declared, which means we would start over again, I think, Thursday morning.

In spite of this admonition and several other strong warnings by Judge Leinenweber, the defendant steadfastly maintained his fervent desire to be judged by this jury. Accordingly, after Judge Leinenweber assured himself that Andrews clearly understood the finality of a guilty verdict, Andrews' motion for a mistrial was withdrawn. The jury was then brought back, instructed to disregard the documents found in the duffel bag, and retired to deliberate. At 4:30 p.m. the jury returned with a verdict of guilty.

## II.

Since his conviction Andrews has reevaluated his decision to be judged by a jury of which at least one member was prejudiced. He respectfully requests, therefore, that his conviction be reversed and a new trial be ordered. He merits a new trial, he asserts, because Judge Leinenweber deprived him of a fair trial by complying with the defendant's demand for a verdict to be returned by an allegedly prejudiced jury. In addition, Andrews asserts he is due a new trial because in complying with his client's demand for the withdrawal of the motion for a mistrial, his counsel's assistance was ineffective and deprived him of a fair trial.

## A.

■ Basic to our Anglo–American regime of ordered liberty is the mandate that, before the imposition of punishment, criminal defendants be given "fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). A fundamental tenet of this scheme is the right to be tried by a jury whose verdict is based solely on the evidence received in open court. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Consequently, where there is a "reasonable possibility" that a jury's verdict has been affected by material not properly admitted as evidence or testimony at trial, the criminal defendant is entitled to a new trial. *United States v. Bruscino*, 687 F.2d 938, 940 (7th Cir.1982) (en banc).

■ Equally fundamental, however, is a criminal defendant's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). So fundamental is this right that it "lies at the foundation of the federal rule that jeopardy attaches when the jury is empaneled and sworn." *Crist v. Bretz,* 437 U.S. 28, 37, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978). Consequently, consistent with the double jeopardy provisions of the fifth amendment, a judge may not declare a mistrial over the defendant's own objections, *even for the defendant's own benefit,* unless there is a "manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Perez,* 9 Wheat. (22 U.S.) 579, 580, 6 L.Ed. 165 (1824). *Accord, Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

■ These two noble aims—the guarantee of a fair trial and the defendant's right to have his trial completed by a particular jury—are normally consistent with one another. In this case however, they oppose each other in the balance which determines Andrews' fate: a balance which we believe weighs more favorably towards the defendant's right to determine his fate at trial.

It is beyond dispute in this case that there was a "reasonable possibility" the jury's verdict was affected by the improperly admitted investigative report and that the criminal defendant was entitled to a new trial. Equally clear is that it was within Judge Leinenweber's discretion to declare a mistrial *sua sponte* to preserve the systemic integrity of a jurisprudence mandating fair trials. However, the trial court was under no *duty* to impose a mistrial over the defendant's own objection.

After being informed by the court of the material improperly admitted to the jury and strongly cautioned by the trial court about the finality of a jury verdict, Andrews knowingly and intelligently waived his right to a mistrial and demanded that this jury return a verdict. In light of the magnitude of evidence against him and the aggravation, expense, and uncertainty of a new trial, Andrews choice is not unreasonable. Regardless, what is important to our inquiry is that the trial court's acceptance of this waiver was not so offensive to our concept of ordered liberty so as to shock our conscience. As Judge Posner eloquently articulated in *United States v. Josefik,* 753 F.2d 585, 588 (1985),

> No doubt there are limits to waiver; if the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept.

Clearly nothing in the procedure in this case or the circumstances of Andrews' waiver rises to a level of offensiveness imposing a duty upon the trial court to declare a mistrial.

### B.

■ Andrews further complains that his attorney's conduct was ineffective and deprived him of a fair trial because his attorney failed to maintain his motion for a mistrial over his client's own objection. This argument is without merit and deserves only a brief discussion.

The fountainhead decision which defines the scope of the right to effective assistance of counsel is of course *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1974). To prevail on any ineffective assistance claim *Strickland* requires the defendant to prove that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced thereby.

Andrews claims that his counsel's conduct fell below an objective standard of reasonableness because he failed to maintain his motion for a mistrial over his client's numerous and vehement demands that this jury return its verdict. From the record it appears that short of binding and gagging his client defense counsel could have done no more to maintain his motion for a mistrial.

**410**

Since no evidence has been presented indicating that defense counsel failed to discharge his duty of informing Andrews of the significance and finality of his decision to waive his right to a mistrial and since the court's acquiescence to Andrews' demand for this jury does not shock our conscience, the conviction of Joseph Mark Andrews is AFFIRMED.