This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, the State of Ohio, appeals from a judgment of the Summit County Court of Common Pleas that granted the motion of appellee, Denny Ross, to bar his retrial on charges including aggravated murder following the trial court's declaration of a mistrial. This Court reverses and remands.
 {¶ 2} On June 10, 1999, Denny Ross was indicted on charges of aggravated murder, rape, kidnapping, tampering with evidence, and gross abuse of a corpse, stemming from the murder of eighteen-year-old Hannah Hill. The indictment was later amended to included capital murder specifications. A jury trial commenced on September 28, 2000. On Saturday, October 28, 2000, while the jury was deliberating, the trial judge received a note from the foreperson of the jury, which was read on the record:
 {¶ 3} "There is concern about a juror. I was approached by a spokeperson for four other jurors. From comments made by this juror these four jurors feel that he is agreeing with the group to expedite this process. I was told by these jurors that the following comments were made.
 {¶ 4} "No. 1, we need to get this done today.
 {¶ 5} "No. 2, why are we even discussing this. He has stated all along that he believes one thing but has all too quickly changed his vote to go along with the group. This morning this juror stated to me that we need to finish this today as he will be leaving after today because he has a problem at home but he did not want to put us in that position.
 {¶ 6} "To another juror he made the comment that he knows that Brad O'Born was innocent because he passed a polygraph test so Denny Ross had to be guilty.
 {¶ 7} "I have been asked if this juror can be released so that he may attend to his affairs at home and we can have an impartial and fair jury."
 {¶ 8} The trial judge met in chambers with counsel for the defense and the prosecution to provide each side an opportunity to be heard on the issue. Although the initial proceedings in chambers were not recorded, the parties reconvened later that day and recounted, on the record, what had been discussed in chambers. The trial judge expressed her view that the note evidenced "the misconduct and corruption of at least one of the jurors in this trial." Neither party disputed that the note provided evidence that information not presented at trial had invaded the jury room during deliberations nor did either party contest the authenticity of the note.
 {¶ 9} The trial judge offered each party the opportunity to voir dire the jury foreperson and the juror who allegedly made the statements. Both parties declined the opportunity and, in fact, firmly objected to any voir dire of the jurors. The trial judge asked the parties whether they would consent to the discharge of the jury. The State consented, but Ross did not. Instead, Ross asked the trial court to consider one of the following alternatives: (1) grant him a mistrial with prejudice, based on alleged misconduct by the State during closing argument and at other points during the trial;[1] or (2) allow the jury to continue deliberating, but grant a mistrial if the jury returned a guilty verdict. The trial judge also considered seating an alternate juror for the complaining juror, although it is not clear from the record who proposed that alternative to declaring a mistrial.
 {¶ 10} The trial judge considered and rejected the alternatives proposed by defense counsel. She also rejected the alternative of seating an alternate juror. She explained her concerns that at least one juror was considering evidence of guilt that had not been presented at trial and that the same juror was refusing to deliberate in good faith. Based upon those concerns and "upon the face of the communication given by Juror No. 4, and since neither party wishes additional inquiry to be made by the Court in regard to a voir dire of any of the potential jurors, [the] Court finds that the jury is unable to fulfill the obligations required by law, to fully and fairly consider the evidence and render a verdict based upon the evidence and the law in this case." The trial judge verbally declared a mistrial and, on November 2, 2000, journalized her declaration of a mistrial. That same day, the trial judge set a new trial date of January 9, 2001.
 {¶ 11} Facts were discovered after the trial court declared a mistrial that, unfortunately, have become the focus of Ross and others who look back at the mistrial decision in hindsight. Of particular interest to Ross and others is the fact that, unbeknownst to the trial judge or the parties at the time a mistrial was contemplated and declared, the jury had completed three verdict forms, finding Ross "not guilty" of the most serious charges against him.
 {¶ 12} On November 9, 2000, Ross filed, among other things, a motion to bar retrial on the grounds of double jeopardy. In his motion, Ross requested that the trial court hold an evidentiary hearing on the issue. On November 20, 2000, Ross filed a petition with the Ohio Supreme Court to disqualify the trial judge. The Supreme Court granted Ross's petition, concluding that there was a significant likelihood that the trial judge would be called to testify about her mistrial decision.
 {¶ 13} A visiting judge was assigned to the case. On May 22, 2001, an evidentiary hearing was held on Ross's motion to bar retrial. At the hearing, evidence was presented concerning what the trial judge considered prior to declaring a mistrial. Much of the evidence presented, however, focused on a hindsight analysis of the thought processes of the trial judge and information that was not before the trial judge at the time she made her decision. Based upon the evidence presented, the visiting judge found that there had been no manifest necessity for a mistrial and that, therefore, the original trial judge had abused her discretion by declaring a mistrial.[2] Therefore, he held that a retrial of Ross was barred by his constitutional protection against double jeopardy. The State appeals and assigns two errors.
 ASSIGNMENT OF ERROR I {¶ 14} "THE SECOND TRIAL COURT'S DISMISSAL ON DOUBLE JEOPARDY GROUNDS IS A NULLITY BECAUSE THE SECOND TRIAL COURT ACTED WITHOUT JURISDICTION AND IN VIOLATION OF THE OHIO CONSTITUTION WHEN IT REVIEWED AND REVERSED THE DISCRETIONARY DECISION OF THE FIRST TRIAL COURT."
 {¶ 15} The State first contends that the trial court was without jurisdiction to rule on the motion to bar retrial. Its first argument is that a court of common pleas does not have jurisdiction to review another court of common pleas. Although it is true that the visiting judge did not have appellate jurisdiction, it was appropriate for him to determine whether double jeopardy barred retrial of Ross. The motion to bar retrial was heard by the same court of common pleas; only the judge had been changed.
 {¶ 16} Next, the State contends that the motion to bar retrial was essentially a motion for reconsideration of a final trial court judgment, which is a nullity. See Pitts v. Ohio Dept. of Transp. (1981),67 Ohio St.2d 378, 379. The State cites no authority to support this proposition and this Court knows of none. The issue of double jeopardy following a trial court's sua sponte declaration of a mistrial is routinely raised through a motion to bar retrial. See, e.g., State v.Glover (1988), 35 Ohio St.3d 18; United States v. Jorn (1971),400 U.S. 470, 475-477, 27 L.Ed.2d 543. The State has failed to convince this Court that the trial court was without jurisdiction to rule on the motion. The first assignment of error is overruled.
 ASSIGNMENT OF ERROR II {¶ 17} "THE SECOND TRIAL COURT'S DISMISSAL ON DOUBLE JEOPARDY GROUNDS IS A NULLITY BECAUSE THE FIRST TRIAL COURT ACTED WITHIN [ITS] DISCRETION BY DECLARING A MISTRIAL SUA SPONTE."
 {¶ 18} The State contends that the visiting judge erred in finding that there was no manifest necessity for declaring a mistrial. Consequently, the State contends that the trial court erred in holding that retrial of Ross was barred on double jeopardy grounds. This Court agrees.
 {¶ 19} This Court must begin by stressing that a record was made of the discussions between the original trial judge and the parties prior to the judge declaring a mistrial on October 28, 2000. Along with his motion to bar retrial and the other motions that Ross filed, however, he requested that the court hold an evidentiary hearing. The State did not oppose that request and, consequently, the visiting judge held an evidentiary hearing on May 22, 2001. At the hearing, Ross presented evidence of many facts that were unknown to the trial judge and the parties at the time the mistrial was declared. He questioned the trial judge, requiring her to defend, or allowing her to justify, in hindsight, her decision to declare a mistrial.
 {¶ 20} This Court has found no authority for reviewing the propriety of a mistrial decision based on an evidentiary hearing held nearly seven months after the decision was made. On the contrary, the mistrial decision should be evaluated on the record that was prepared at that time. See Hines v. State (1873), 24 Ohio St. 134, paragraph two of the syllabus; State v. Morgan (1998), 129 Ohio App.3d 838, 842. Consequently, this Court confines its review to the record of October 28, 2000. Although it is difficult to ignore the facts that were later discovered, in particular the three "not guilty" verdict forms, this Court, as a matter of law, must not consider these facts. Facts unknown to the trial judge and the parties simply cannot enter into the review of the trial court's mistrial decision.
 {¶ 21} Next, this Court must look to the standard of its review. "Where the trial judge sua sponte declares a mistrial, double jeopardy does not bar retrial unless the judge's action was instigated by prosecutorial misconduct designed to provoke a mistrial, or the declaration of a mistrial constituted an abuse of discretion." (Emphasis sic.) State v. Glover (1988), 35 Ohio St.3d 18, syllabus.
 {¶ 22} In determining whether the trial court properly exercised its discretion, reviewing courts look to whether (1) "there [was] a `manifest necessity' or a `high degree' of necessity for ordering a mistrial, or (2) `the ends of public justice would otherwise be defeated.'" State v. Widner (1981), 68 Ohio St.2d 188, 189-190, citingArizona v. Washington (1978), 434 U.S. 497, 54 L.Ed.2d 717. The Ohio Supreme Court, recognizing that there are a variety of circumstances in which a mistrial may arise, "has been reluctant to formulate precise, inflexible standards. Rather, the court has deferred to the trial court's exercise of discretion in light of all the surrounding circumstances[.]"Widner, 68 Ohio St.2d at 190. See, also, United States v. Jorn (1971),400 U.S. 470, 480.
 {¶ 23} The Glover court emphasized that a defendant's right is not absolute; rather, it must be balanced with the State's competing interests: "the defendant's right to have the charges decided by a particular tribunal is weighed against society's interest in the efficient dispatch of justice." 35 Ohio St.3d at 19, citing State v. Calhoun
(1985), 18 Ohio St.3d 373, 376, and United States v. Scott (1978),437 U.S. 82, 92. This balance does not always tip in favor of the defendant's constitutional right; rather, "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Wade v. Hunter (1949), 336 U.S. 684, 689,93 L.Ed. 974.
 {¶ 24} Although the judgment that the State has appealed is the trial court's February 15, 2002 order barring retrial, the focus of this Court's review remains on the trial court's prior order declaring a mistrial. As was explained by the First Circuit Court of Appeals inUnited States v. Keene (C.A.1, 2002), 287 F.3d 229, 233-234:
 {¶ 25} "Our standard of review is intricate. Technically, we are called upon to review the [trial] court's denial of a motion to dismiss on double jeopardy grounds. *** [T]he correctness of the [trial] court's decision ultimately hinges on the justification for ordering a mistrial. The decision as to whether to declare a mistrial speaks to the informed discretion of the [trial] court, and is customarily reviewed only for abuse of that discretion. See United States v. Pierro, 32 F.3d 611, 617
(1st Cir. 1994). Where, as here, a motion to dismiss on double jeopardy grounds trails in the wake of the [trial] court's declaration of a mistrial, both the Supreme Court and this court have consistently applied an abuse of discretion standard in reviewing appeals from the denial of such motions. E.g., Arizona v. Washington, 434 U.S. at 514 ***; UnitedStates v. Jorn, 400 U.S. 470, 486, 27 L.Ed.2d 543, 91 S.Ct. 547 (1971) ***. We therefore review the [trial] court's decision here for abuse of discretion.
 {¶ 26} "*** As we use the term, [abuse of discretion,] it encompasses multiple layers of inquiry. See Koon v. United States,518 U.S. 81, 98-100, 135 L.Ed.2d 392, 116 S.Ct. 2035 (1996). In the course of such review, "we accept the trial court's factual findings only to the extent that they are not clearly erroneous." United States v.Bradshaw, 281 F.3d 278, 291 (1st Cir. 2002). In contrast, we evaluate the [trial] court's articulation of applicable legal rules de novo, cognizant that a mistake of law is equivalent to an abuse of discretion. In reGrand Jury Subpoena, 138 F.3d 442, 444 (1st Cir. 1998); United States v.Snyder, 136 F.3d 65, 67 (1st Cir. 1998). Only then do we inquire whether, in view of all the facts and circumstances, the trial court's finding of a manifest necessity to discharge the jury and declare a mistrial constitutes a misuse of its discretion. See Illinois v.Somerville, 410 U.S. 458, 462-63, 35 L.Ed.2d 425, 93 S.Ct. 1066 (1973);Brady v. Samaha, 667 F.2d 224, 228 (1st Cir. 1981)."
 {¶ 27} Consequently, to the extent the visiting judge made factual findings based on the record at the time of the mistrial, this Court must defer to those findings. The relevant facts were not disputed, however, so the visiting judge was required to make very few findings of fact. The visiting judge's finding that there was no manifest necessity for a mistrial, on the other hand, was a legal conclusion that this Court reviews de novo. See State v. Robinson (1994), 182 Wis.2d 512,514 N.W.2d 880. The visiting judge applied an incorrect legal standard in reaching his legal conclusion that there was no manifest necessity for a mistrial, and "a mistake of law is equivalent to an abuse of discretion."See United States v. Keene, supra. For the reasons that follow, this Court finds that the visiting judge committed reversible error in finding that there was no manifest necessity for a mistrial.
 {¶ 28} Ross, and the visiting judge, improperly equated "manifest necessity" with absolute necessity. They faulted the original trial judge for failing to consider all possible alternatives to a mistrial, many of which were either not raised or were objected to by defense counsel at the time the trial judge was faced with the decision. This Court found no controlling or persuasive authority to support the proposition that there is no manifest necessity for a mistrial unless the trial judge first rules out every possible alternative to a mistrial. Although the visiting judge cited authority for that proposition, that authority is not sound. The case cited by the visiting judge, Love v. Morton (C.A.3, 1997),112 F.3d 131, 137, cites another federal appellate case, United Statesv. McKoy (C.A.3, 1979), 591 F.2d 218, 222, which in turn cites two United States Supreme Court cases, United States v. Jorn, supra, and Arizona v.Washington, supra, neither of which supports such a proposition. In bothUnited States v. Jorn and Arizona v. Washington, the United States Supreme Court made it clear that a trial court abuses its discretion by declaring a mistrial without considering any alternatives; it did not hold that the trial court must rule out all possible alternatives before declaring a mistrial. See, also, Crawford v. Fenton (C.A.3, 1987),646 F.2d 810, 818 (rejecting argument that double jeopardy will bar retrial unless trial court considered every available alternative before declaring a mistrial.)
 {¶ 29} A "manifest necessity" for a mistrial does not mean that a mistrial was absolutely "necessary" or that there was no other alternative. See Arizona v. Washington, 434 U.S. at 511. To exercise "sound discretion" in determining that a mistrial is necessary, the trial judge should allow the defense and prosecution to state their positions on the issue, consider their competing interests, and explore some reasonable alternatives before declaring a mistrial. See id. at 514-516. The record in this case demonstrates that the trial judge allowed the parties to state their positions, considered their competing interests, and made a thorough inquiry into reasonable alternatives prior to declaring a mistrial in this case.
 {¶ 30} As the trial judge emphasized, and despite Ross's argument to the contrary, both Ross's interests and those of the State were implicated by the note from the jury foreperson. The note indicated, on its face, that the jury had been tainted with information that should not have been in the jury room and that one of the jurors was refusing to deliberate in good faith. Notes coming from the jury room are typically taken at face value. See, e.g., State v. Sabbah (1982), 13 Ohio App.3d 124. Moreover, at the time the trial judge discussed the note with both parties, neither party even suggested that the information in the note should be questioned. In fact, both parties objected to questioning any of the jurors about the note.
 {¶ 31} The note was an indication of juror misconduct and the information within it was inherently reliable. No evidence that Brad Born (another potential suspect) had passed a polygraph test was presented at trial. For a juror to have gotten this information about the polygraph, he or she would have had to have gotten it from some outside source, suggesting that one of the jurors had disregarded the judge's instructions. According to the note, that juror had also shared the outside information with other jurors. The note further indicated that the juror who had the outside information was willing to agree with anything the others wanted because he was in a hurry to end the deliberations.
 {¶ 32} The face of the juror note, therefore, indicated that a member of the jury was refusing to deliberate in good faith and was sharing improper, prejudicial information with other jurors. Both Ross and the State were entitled to an impartial jury, free from bias for or against either party, and to a panel of jurors "who would abide by their oaths, individually, to `well and truly try, and true deliverance make between the State * * * and the defendant * * *.'" State v. Wilson
(1972), 29 Ohio St.2d 203, 211, quoting R.C. 2945.28.
 {¶ 33} The State and the public have a significant interest in the integrity of the judicial process and that interest must impact the mistrial decision. See United States v. Huang (C.A.2, 1992), 960 F.2d 1128,1136. A jury tainted with outside information and a juror who refuses to deliberate in good faith implicates not only the defendant's rights but also the public's interest in the integrity of the judicial process. SeeCleveland v. Wade (Aug. 10, 2000), 8th Dist. No. 76652. In Huang, supra, the court noted that, even if a defendant chooses to waive an objection to a trial court error, he cannot "force the continuation of the trial to the prejudice of the government and the public. *** [T]he court could reasonably conclude that a mistrial was required in the interests of justice." 960 F.2d at 1136.
 {¶ 34} As the United States Supreme Court emphasized in Arizonav. Washington, "[n]either party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, `the public's interest in fair trials designed to end in just judgments' must prevail over the defendant's `valued right' to have his trial concluded before the first jury impaneled." Arizona v. Washington (1978), 434 U.S. 497,516, 54 L.Ed.2d 717, quoting Wade v. Hunter (1949), 336 U.S. 684, 689,93 L.Ed. 974.
 {¶ 35} Ross and the visiting judge repeatedly emphasized the fact that the prosecution did not argue that the State's interests were at stake but spoke only of the potential prejudice to Ross, suggesting that such a failure somehow waived the State's interest or removed it from the mistrial balancing test. Although the parties may not have emphasized the potential for prejudice to the State at the time the original trial judge contemplated the possibility of a mistrial, the trial judge clearly did.
 {¶ 36} As the original trial judge stressed on the record before she declared a mistrial:
 {¶ 37} "[H]e's made these representations to other jurors in that jury room and that he is refusing in good faith to negotiate with other jurors; that he is refusing in good faith to continue deliberations fully and fairly; that he is indicating that he would leave at the end of today and that they must conclude this case today. This is a refusal to fulfill the obligation of a juror.
 {¶ 38} "[The] Court also is concerned that his representations regarding evidence that he apparently believes based on this, evidence that was not presented during trial."
 {¶ 39} At the same time, the trial judge explained how, during voir dire, each juror was asked whether there was any reason that they could not render a full and impartial decision and that this juror had an obligation to indicate at that time, which he did not do, if he had a pressing matter at home or if he had information about the case that would influence his decision. The judge then found "that as a result of his representations to other jurors that he has impeded full and fair deliberation of the evidence in this case and that the Court is absolutely convinced that there's no way what the bell has struck I can unring."
 {¶ 40} Although the visiting judge concluded that the original trial judge had rushed to judgment without thoroughly considering the alternatives available, that conclusion was not supported by the record of what transpired on October 28, 2000.[3] Prior to declaring a mistrial, the original trial judge asked the parties to state their positions on this issue and discussed with them each of the proposed alternatives to declaring a mistrial.
 {¶ 41} The obvious reason for allowing the parties to be heard on the issue is to provide them with an opportunity to not only comment on, but to participate in, the decision to declare a mistrial. SeeUnited States v. Lynch (C.A.D.C. 1978), 598 F.2d 132, 136. In determining whether a trial judge abused her discretion in declaring a mistrial sua sponte, reviewing courts focus on whether she allowed the parties to suggest alternatives and whether she considered those proposed alternatives. See, e.g., Long v. Humphrey (C.A.8, 1999), 184 F.3d 758,761; United States v. Bates (C.A.9, 1991), 917 F.2d 388, 396; UnitedStates v. Klein (C.A.2, 1978), 582 F.2d 186, 195.
 {¶ 42} "A judge cannot be required to consider every conceivable alternative before declaring a mistrial; so to require would be to ask the impossible. The judge must consider reasonable available alternatives. If an alternative which was neither suggested by counsel nor considered by the judge is later developed, we will not fault the judge, so long as an honest inquiry into alternatives is made."Commonwealth v. Cassidy (1991), 410 Mass. 174, 179, 571 N.E.2d 383. See, also United States v. DiPietro (D.Mass., 1990), 741 F. Supp. 293, 297
(finding defendant's contention that court did not exercise sound discretion was unfounded, particularly because defense counsel proposed no alternatives at the time).
 {¶ 43} Ross proposed that the trial judge allow the jury to continue deliberating and grant him a mistrial if the jury found him guilty. Ross has repeatedly insisted that he had the right to have his fate decided by this jury and that he had the right to waive any prejudice to him caused by the improper polygraph information. He never indicated that he was willing to waive that prejudice, however. Despite Ross's argument to the contrary, he did not attempt to preserve his right to have his fate decided by the original jury. A defendant's right to go forward with his original jury encompasses the notion that the defendant may want to have his fate determined once and for all and avoid having to stand trial a second time. As demonstrated by the very cases that Ross cited in support of his argument, however, allowing the jury to determine a defendant's fate means that the defendant agrees to take his chances and is willing to accept the jury's verdict, be it guilty or not guilty. See, e.g., United States v. Dinitz (1976), 424 U.S. 600, 608,47 L.Ed.2d 267; United States v. Andrews (C.A.7, 1990), 895 F.2d 406, 409. "As a matter of constitutional right, an accused person in this country who perceives himself mid-trial to have a `winner' is entitled to his `shot at the jury'[,]" but taking a "shot" necessarily includes the risk of a guilty verdict. State v. Parkinson (Aug. 9, 1990), 5th Dist. Nos. CA-3506 and CA-3508. Ross never expressed a willingness to take his chances with the first jury, for he was only willing to accept a verdict of not guilty. He wanted to preserve a mistrial for himself if a guilty verdict was rendered.
 {¶ 44} As the trial judge stressed, the alternative proposed by Ross protected only his rights and did not protect the public's interest in having an accused's guilt or innocence determined through a fair and impartial process. Because the interests of both Ross and the State were implicated by the foreperson's note, the trial judge reasonably rejected Ross's proposed alternative, indicating that it was not fair to the State.
 {¶ 45} The trial judge asked the parties if they wanted to voir dire the jury foreperson or the complaining juror. Both parties refused and objected to voir dire of any of the jurors. Ross's counsel stated on the record that Ross was opposed to any voir dire of the jury because "that would have a prejudicial impact on their deliberations." After the fact, however, Ross contended that the trial judge abused her discretion for failing to voir dire the jury. It is important to note that both Ross and the visiting judge repeatedly condemn the original trial judge's failure to discover, prior to declaring a mistrial, that the jury had completed three verdict forms. This Court must again emphasize that, at the time the trial judge made the mistrial decision, the existence of these verdicts was unknown and both parties were voicing their objections to any questioning of the jurors. Without a voir dire, how could the judge have discovered the verdict forms? Moreover, any direct inquiry into the status of deliberations, or whether there were partial verdicts, would also have been improper. To fault the original trial judge, in hindsight, for failing to voir dire the jurors over the objections of both parties is a tactic that this Court cannot countenance.
 {¶ 46} As legal support for his position that voir dire was required, despite the objections of the parties, Ross cites State v.Gonzalez (Dec. 3, 1999), 6th Dist. No. H-99-002, in which the appellate court found that the trial court abused its discretion by declaring a mistrial based on a note from the jury room because the trial court did not voir dire the jurors first. Gonzalez is distinguishable for several reasons, most notably that the defendant had specifically requested the trial court to voir dire the jury but the court refused to do so, and the note was unsigned and involved only a potential problem with one juror not being able to hear clearly. The circumstances here were completely different where the foreperson of the jury submitted the note and it contained specific details about a juror's failure to deliberate in good faith and the introduction of evidence to the jury that was not presented at trial. Gonzalez itself made clear that voir dire of the jury, before declaring a mistrial, is not necessary in every case where a jury submits a note to the court when the note itself is sufficiently detailed.
 {¶ 47} The trial judge clearly considered a voir dire of one or more of the jurors prior to declaring a mistrial but, because both parties voiced their objections, she did not pursue that option. As stressed above, in evaluating the trial court's exercise of discretion, a reviewing court must look at all of the surrounding circumstances, including what was expressed by the parties at the time the trial court considered its options. That the trial judge honored the wishes expressed by the parties and did not voir dire any of the jurors seems to comport with an exercise of sound discretion, not an abuse of it. See, also,State v. Wilson, 1st Dist. No. C-000670, 2002 Ohio 1854, ¶ 75 (finding that trial court did not err in failing to grant a mistrial sua sponte when defendant asked the court to forgo that option and proceed with the trial. "Wilson cannot now complain that the trial court should have ignored his request[.]"). The original trial judge in this case did not abuse her discretion for deciding not to pursue an alternative that both parties opposed.
 {¶ 48} Finally, the visiting judge emphasized the fact that the original judge did not pursue the option of removing the complaining juror, either by seating an alternate or by removing the juror and proceeding with eleven jurors. In his opinion, the visiting judge repeatedly emphasized this as a viable alternative to a mistrial, a conclusion that was not supported by the record in this case.
 {¶ 49} The original trial judge did consider the alternative suggested in the jury foreperson's note, replacing the complaining juror with an alternate juror, but she rejected that course of action because she did not "believe seating an alternate at this point in time could undo the damage that's been done to the deliberations in this case." Moreover, the possibility of seating an alternate at that point in the proceedings would not have been lawful. Crim.R. 24(F) provides for replacing jurors, who are unable to serve or are disqualified, with alternate jurors "prior to the time the jury retires to consider its verdict[.]" R.C. 2313.37(D) likewise allows an alternate juror to replace a juror for certain enumerated reasons only "before the final submission of the case to the jury[.]"
 {¶ 50} In capital murder cases, however, Crim.R. 24, as it existed at the time of Ross's trial, was less than clear on the role of alternate jurors after the case was submitted to the jury for deliberation. Former Crim.R. 24(F) explicitly provided that "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict." The rule also provided, however, that "[a]fter submission of a capital case to the jury, the jury shall remain under the supervision of an officer of the court until a verdict is rendered or the jury is discharged by the court." Crim.R. 24(G)(1)(c). The Ohio Supreme Court interpreted the language of former Crim.R. 24(F) and (G)(1)(c) to allow for substitution of a regular juror with an alternate "after the guilt phase verdict, but before deliberations begin in the penalty phase." State v. Hutton (1990), 53 Ohio St.3d 36, paragraph three of the syllabus. There was no language in former Crim.R. 24 to allow for substitution during deliberations, however. As the Hutton court noted, "after the jury retires to deliberate, alternates may not replace regular jurors." Id. at 46. Crim.R. 24(F) has been amended to explicitly incorporate this understanding.[4] Because the option of replacing the complaining juror with an alternate was not even available to the trial court, the trial court did not abuse its discretion for failing to do so.
 {¶ 51} The visiting judge further faulted the original trial judge for failing to dismiss the complaining juror and allowing deliberations to proceed with eleven jurors. The alternative of proceeding with eleven jurors was not proposed by Ross, nor had he consented to it. Consequently, the trial court could not have forced a jury of eleven on Ross. See State v. Wilson, 1st Dist. No. C-000670, 2002 Ohio 1854, citingState v. Baer (1921), 103 Ohio St. 585, parargraph two of the syllabus. Furthermore, even if Ross has consented, the State could not be compelled to proceed with only eleven jurors. See Crim.R. 23(B).
 {¶ 52} As the original trial judge explained on the record, she felt that she had no other alternative but to declare a mistrial. This Court finds no abuse of discretion in that determination. The visiting judge, based on an incorrect legal standard, erred in finding that there was no manifest necessity for a mistrial. The fact that another trial judge may have handled the situation differently, or that, in hindsight, defense counsel would have the trial judge consider additional alternatives, does not demonstrate that the original trial judge abused her discretion in determining that a mistrial was necessary. See Arizonav. Washington, 434 U.S. at 509-510. The second assignment of error is sustained and the case is reversed and remanded for retrial.
 {¶ 53} The Court finds that there were reasonable grounds for this appeal.
 {¶ 54} We order that a special mandate issue out of this Court, directing the , County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
 {¶ 55} Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
WHITMORE, J. concurs
[1] This Court will not address this alternative on appeal because Ross did not argue it as a basis to bar his retrial. Consequently, he waived any alleged error in the denial of a mistrial based on alleged misconduct by the State.
[2] The visiting judge, who sat as a trial judge in this case, seemed to view his role as that of an appellate judge, reviewing the original trial judge's decision for an abuse of discretion. Pursuant to Section4(B), Article IV of the Ohio Constitution, a court of common pleas has no authority to review another decision of the court of common pleas. The visiting judge's role here was to determine whether there had been a manifest necessity to declare a mistrial, not whether the original trial judge had abused her discretion.
[3] The primary emphasis of Ross's arguments and the visiting judge's opinion was on information that was discovered after the mistrial was declared. This Court does not comment upon any of that information. As this Court has already emphasized, it confines its review to the record prepared at the time the decision was made.
[4] Crim.R. 24(F) was amended, effective July 1, 2002, to provide that in capital cases, alternate jurors continue to serve in the event that a substitution is required after the jury deliberation in the guilt phase and before deliberation in the penalty phase, but that "[n]o alternate shall be substituted during any deliberation." Crim.R. 24(F)(2).