2020 IL App (1st) 180255-U

No. 1-18-0255

June 30, 2020

First Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 10919 |
| | ) | |
| KEVIN LUNDY, | ) | Honorable |
| | ) | Diane Cannon, |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Griffin and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   A postconviction petition with affidavits supporting a claim that defense counsel failed to use strong evidence to impeach testimony that the defendant confessed, and defense counsel failed to investigate an alibi defense, states the gist of a claim for ineffective assistance of counsel.

¶ 2        A jury found Kevin Lundy guilty of a murder and aggravated battery committed when Lundy was 21 years old.  The trial court sentenced Lundy to consecutive terms of 50 years and 12 years in prison and later summarily dismissed Lundy's postconviction petition.  In this appeal, Lundy argues that he received ineffective assistance of counsel and the trial court imposed a *de facto* life sentence without adequately considering his youth.  We reverse and remand to advance the petition to the second stage of postconviction proceedings.

¶ 3                                I.  BACKGROUND

¶ 4        At approximately 4:30 p.m. on April 24, 2005, Vernard Butler drove his sister, Tierra Smith, and her friend, Virginia Hines, to a store at the corner of 79th and Bennett in Chicago. When they left the store, Butler stopped to speak with Larry Williams while Smith and Hines went back to the car.  A man approached from the alley, wearing a black jacket, and carrying a large gun.  The man shot Butler in the foot, then turned around and shot Williams three times and ran away.  Williams died from the gunshot wounds.  Butler got in his car and drove home.

¶ 5        Later that evening, Butler went to the police station. The detectives showed Butler a photo array, and he identified Lundy as the shooter.  Smith and Hines also identified Lundy as the shooter.  Prosecutors charged Lundy with the first-degree murder of Williams and the aggravated battery with a firearm of Butler.

¶ 6        At the trial, held in August 2007, Butler again identified Lundy as the shooter. Butler testified that Lundy wore all black clothing on April 24, 2005.  Lundy's mask left his eyes, nose, and cheek bones uncovered.  When Butler realized he had been shot, he ran to the northwest side of the street where he knew a police officer resided.  Butler testified that Lundy

crossed the street but then stopped, took off his mask, looked behind him, put the gun in the mask, and took off running.

¶ 7        Butler testified that he had known Lundy for two to three years prior to the shooting. Butler often saw Lundy walking in the neighborhood and would speak to Lundy whenever he came around.

¶ 8        Smith and Hines also identified Lundy in court as the man they saw shoot Butler and Williams. Smith and Hines agreed that the mask left Lundy's eyes and nose uncovered, and that he wore only black clothing. Smith admitted that she had not known Lundy prior to the shooting.

¶ 9        David Ridley testified that he had known Lundy for a long time and he was a close friend. Ridley acknowledged that he faced serious charges for gun offenses and possession of a stolen motor vehicle. When police arrested him on the charges, they asked him whether he knew anything about the shooting of Williams. Ridley admitted that he hoped to do as little time as possible on the charges against him.

¶ 10        Ridley testified that he could not recall much about the conversations he had with Lundy about the offense nor could he recall exactly what he told the assistant State's Attorneys or the grand jury about these conversations. When the State confronted him with his handwritten statement and read aloud portions of his grand jury testimony, Ridley did not deny making the statements, but he testified that he could not remember making most of the statements.

¶ 11        The prosecutor questioned Ridley about the following passage from the transcript of grand jury proceedings:

"Question. What happened when [Lundy] saw Larry on the corner. Answer. He shot him. He shot him in the stomach or the chest first. He *** said Larry started tumbling toward him, you know like he was trying to grab him or something and he said he backed up. He shot him *** [and] the blood [was] coming out of Larry's mouth like he was choking on his blood. So I assumed it was somewhere up here in his throat or his face. And he said he just shot him 2 more times up in the face or in the neck somewhere. It was up. He wasn't really sure where, but it was up high somewhere.

Question. Again, when you say he, who are you referring to.

Answer. Kevin [Lundy]."

¶ 12    The prosecutor asked Ridley whether the transcript of grand jury proceedings accurately recounted Ridley's testimony. Ridley answered, "Yeah, I believe so." The trial transcript also includes the following testimony:

"Q  Did the defendant ever tell you during a conversation over the phone that he shot Larry Williams at 79th and Bennett?

A  I don't know if it was over the phone or not. He told me but I don't know if it was over the phone ***.

Q  Okay. The defendant told you that he shot Larry Williams?

A  Yes."

¶ 13    Lundy did not testify, and the defense presented no evidence. Following closing arguments, the jury found Lundy guilty of first-degree murder and aggravated battery with a firearm. The trial court denied Lundy's motion for a new trial and sentenced him to fifty years for first

degree murder and twelve years for the aggravated battery, with the sentences to run consecutively. This court affirmed the convictions and sentences on direct appeal. *People v. Lundy*, 2016 IL App (1st) 131866-U.

¶ 14   Lundy, helped by an attorney, filed a postconviction petition on October 25, 2017. He argued that his sentence constituted a *de facto* life sentence that violated the Illinois Constitution. He also contended he received ineffective assistance of counsel, because counsel failed to impeach Ridley more thoroughly and failed to interview an alibi witness. Lundy alleged that his counsel received an affidavit from Ridley in which Ridley said:

"Detectives *** coerced affiant into making certain statements against Kevin Lundy.

*** [O]fficers told affiant, that if affiant said certain things against this individual, said officers would make affiant['s] issues with them disappear.

*** [A]ffiant told the State's Attorney that affiant had been coerced by the police officers *** and that all said statements that affiant had made were untrue.

***

[Before trial A]ffiant spoke with another State's Attorney agent, at which time affiant re[i]terated that affiant had been coerced and didn't actually know anything regarding the case against Kevin Lundy.

*** [T]he State's Attorney *** told affiant that if affiant didn[']t go into courtroom and say what affiant had initially told their agency, that the State's Attorney office would *** charge affiant with the shooting. ***

* * *

*** [O]fficers told affiant what to tell the State's Attorney also the circuit court judge. But what affiant was told by the *** officers to say wasn't true."

¶ 15    Lundy attached to the postconviction petition a copy of the affidavit, notarized on April 9, 2007, several months before the trial.

¶ 16    Lundy also attached to the petition an affidavit from Amanda Berry, who said that Lundy helped her move into her new apartment on April 24, 2005. He met her around 3 p.m. They spent more than an hour looking at the new apartment, and then they bought groceries before making several trips to move her into her new home. Lundy's lawyer never contacted her.

¶ 17    The trial court dismissed the postconviction petition as frivolous. The court specifically rejected the sentencing claim, holding that it "stem[med] from *Miller v. Alabama*, 567 U.S. 460 (2012)," which applied only to juveniles, and not to adults like Lundy. Lundy now appeals.

¶ 18    II. ANALYSIS

¶ 19    On appeal, Lundy argues that he adequately stated claims for ineffective assistance of counsel and for unconstitutional sentencing. We review the summary dismissal of a postconviction petition *de novo. People v. Tate*, 2012 IL 112214, ¶ 10. "A petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. [Citation.] This first stage in the proceeding allows the circuit court to act strictly in an administrative capacity by screening out those petitions which are without legal substance or are obviously without merit. [Citation.] Because most petitions are drafted at this stage by defendants with little legal knowledge or training, this court views the threshold for survival as low." (Internal quotation marks omitted.) *Tate*, 2012 IL 112214, ¶ 9. The defendant need only "allege enough facts to make out a claim that is arguably

constitutional for purposes of invoking the Act." (Internal quotation marks omitted.) *People v. Hodges*, 234 Ill. 2d 1 (2009). This standard applies even when an attorney has assisted the petitioner with drafting his postconviction petition. *Tate*, 2012 IL 112214, ¶ 12.

¶ 20 Lundy contends that he has presented the gist of a claim that he received ineffective assistance of counsel. He relies on two alleged failures of trial counsel: trial counsel did not use Ridley's affidavit to impeach him, and counsel did not interview alibi witness Berry.

¶ 21 "To succeed on a claim of ineffective assistance, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that such performance prejudiced the defendant. [Citation.] In the context of a first-stage postconviction claim, a defendant need only show that he can arguably meet those two standards, i.e., it is arguable that his counsel was deficient and it is arguable that the outcome of his case would have been different absent the deficient representation." (Emphasis omitted) *People v.Wilson*, 2013 IL App (1st) 112303, ¶ 20. The failure to impeach a key witness may amount to ineffective assistance of counsel. *People v. Salgado*, 263 Ill. App. 3d 238, 246-47 (1994).

¶ 22 We must consider the impeaching material in context to determine whether counsel's performance fell below an objective standard of reasonableness when he failed to use available evidence to impeach the witness. *Salgado*, 263 Ill. App. 3d at 247.

¶ 23 This court on the direct appeal expressly found the evidence not closely balanced. *Lundy*, 2016 IL App (1st) 131866-U, ¶ 45. No physical evidence tied Lundy to the crime, but (1) an eyewitness who knew Lundy from the neighborhood recognized him, picked his picture from a photo array a few hours after the crime, and identified him in court as the shooter; (2) two other eyewitnesses similarly picked Lundy's photograph from a photo array shortly after the

shooting and identified him in court as the shooter; and (3) Ridley, a close friend of Lundy, testified that Lundy told Ridley that Lundy shot Williams. In the affidavit Lundy's attorney failed to use at trial, Ridley said that he knew nothing at all about the crime, and he lied under oath because police and an assistant State's Attorney threatened him. Ridley said in the affidavit that he lied in all the statements he made to police, including that statement that Lundy said he shot Williams.

¶ 24    Confessions generally carry "extreme probative weight" (*People v. St. Pierre*, 122 Ill. 2d 95, 114 (1988)), and they "frequently constitute the most persuasive evidence against a defendant." *People v. Clay*, 349 Ill. App. 3d 24, 30 (2004). The proposed impeachment of Ridley's testimony that Lundy confessed would undercut one of the principal pieces of the evidence supporting the conviction.

¶ 25    "Failure to adequately prepare for trial, including failure to conduct an investigation and interview witnesses, has been held to constitute inadequate representation by counsel. [Citation.] The failure to interview witnesses may indicate actual incompetence, particularly when the witnesses are known to trial counsel and their testimony may be exonerating." *People v. Barry*, 202 Ill. App. 3d 212, 216 (1990). Berry's affidavit supports Lundy's claim that defense counsel could have presented credible alibi testimony. The trial record makes no mention of Berry or the alibi. The State argues that due to the omission, the record positively rebuts the postconviction petition, because Lundy would have mentioned Berry's potential testimony at some point in the record if he had told counsel about it. We cannot construe the absence of mention as a positive rebuttal of the assertions in the postconviction petition.

¶ 26     The State also emphasizes that in the postconviction petition Lundy does not state when he made counsel aware of Berry, and he does not specifically state in the petition that he made counsel aware of Berry before trial.  The postconviction petition, at the first stage of postconviction proceedings, need only allege facts showing the gist of a constitutional claim. "This 'gist' standard is a low threshold which requires the defendant to present only a limited amount of detail, not the claim in its entirety or legal argument or citation to legal authority." *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 57.  We find that the postconviction petition adequately alleges facts that could arguably show counsel committed an unprofessional error by failing to interview Berry before trial.  Thus, we find that, arguably, trial counsel should have presented Berry's alibi testimony and should have impeached Ridley with the affidavit in which Ridley said all his statements to police were false.

With the confession impeached and no physical evidence, the conviction would rest on the testimony of three eyewitnesses.  One of those witnesses had never seen Lundy before the shooting, and all three admitted that the shooter wore a mask that concealed much of his face. The alibi would count to some extent against the credibility of the eyewitness identifications. Although this court found the evidence against Lundy not closely balanced, we find that the two pieces of missing evidence arguably could have made a difference in the result of the trial. Accordingly, we find that the allegations of ineffective assistance of counsel provide grounds for reversing the dismissal of the postconviction petition at the first stage of postconviction proceedings. The trial court cannot partially dismiss postconviction petitions during the first stage. *People v. Rivera*, 198 Ill. 2d 364, 371-72 (2001). Because we find that Lundy's petition

should proceed on his claim of ineffective assistance of counsel, we do not reach the claim regarding the unconstitutionality of his sentence.

¶ 27                                III. CONCLUSION

¶ 28        Lundy sufficiently alleged facts that could arguably support a finding that his attorney provided objectively unreasonable assistance by failing to use available impeaching evidence and by failing to interview an alibi witness. A court could find that Lundy might have achieved a better result at trial if not for the alleged errors. Accordingly, we reverse the dismissal of Lundy's postconviction petition and we remand to advance the petition to the second stage of postconviction proceedings.

¶ 29        Reversed and remanded.